IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 112,250

STATE OF KANSAS,
*Appellee*,

v.

ZACHARY C. SMITH,
*Appellant.*

SYLLABUS BY THE COURT

1.

A criminal defendant may be allowed to take a late appeal under the exceptions stated in *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255 (1982). The three *Ortiz* exceptions consider whether a criminal defendant (a) was not informed of the right to appeal; (b) was not furnished an attorney to perfect an appeal; or (c) was furnished an attorney who failed to perfect an appeal.

2.

When the failure to inform the defendant of the right to appeal is at issue, a court considers whether the defendant was denied basic procedural due process. To provide due process in this context, a district court must inform a criminal defendant at sentencing that (a) a right to appeal the severity level of the sentence exists; (b) the statutory time within which such appeal must be taken; and (c) if the defendant is indigent, an attorney will be appointed for the purpose of taking any desired appeal.

1

3.

Claims under the first *Ortiz* exception are analyzed using a three-part burden shifting framework. First, the defendant must demonstrate from the sentencing hearing transcript that the court failed to communicate one or more of the three required pieces of information. If that is shown, the State may prevent a late appeal by proving the defendant nonetheless possessed actual knowledge of the required information by some means other than the court's statements at sentencing. This actual knowledge may come from counsel's advice, the wording of an agreement signed by the defendant, or some other person or document. If the State does not satisfy this second step, the defendant must prove that a timely appeal would have been sought if the defendant had been properly informed.

4.

Under K.S.A. 2014 Supp. 22-3210(e)(1), a motion to withdraw plea must be brought within a year of:  (a) the final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or (b) the denial of a petition for a writ of certiorari to the United States Supreme Court or issuance of such court's final order following the grant of such petition. But this time limitation can be extended by a court upon an affirmative showing of excusable neglect by the defendant under K.S.A. 2014 Supp. 22-3210(e)(2).

Appeal from Sumner District Court; R. SCOTT MCQUIN, judge. Opinion filed January 29, 2016. Affirmed.

*Kevin J. Zolotor*, of O'Hara & O'Hara LLC, of Wichita, argued the cause, and *Charles A. O'Hara*, of the same firm, was with him on the brief for appellant.

*Lee J. Davidson*, assistant attorney general, argued the cause, and *Derek Schmidt*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: More than 7 years after accepting a plea agreement and pleading guilty to felony murder and aggravated robbery, Zachary C. Smith filed a direct appeal of his sentence, as well as a motion to withdraw his pleas. He argues the district court erred when it rejected both efforts because they were untimely and not otherwise subject to exceptions from the statutory time limitations. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In exchange for Smith's guilty pleas entered in 2006 and his agreement to testify against an accomplice, the State dismissed one count of first-degree premeditated murder, which was charged as an alternative to the felony-murder count. It was agreed both parties would recommend that Smith receive the low (mitigated) grid-box sentence for the aggravated robbery conviction, which would run consecutive to the felony-murder conviction's hard 20 life sentence.

In January 2014, Smith moved to withdraw his pleas. He alleged he was not fully informed of the consequences of the pleas, including the required terms of post-release supervision, offender registration, and parole; the sentence for the first-degree murder conviction; that the jury could not consider his refusal to testify; that he was waiving most appeal rights; and that he had to be paroled on the life sentence before beginning to serve the aggravated robbery sentence. He also argued he was not of sound mind at the plea hearing because he was taking a medication. The State responded that the motion was time-barred and that Smith failed to allege any facts demonstrating excusable neglect, a necessary condition to overcome the time bar. See K.S.A. 2014 Supp. 22-3210(e)(2).

In an amended motion, Smith added to his claims, arguing that he did not learn there was a mechanism to withdraw his pleas until sometime within the 12 months preceding his motion; his "mental state was not so that he realized his constitutional rights"; he "did not know or comprehend all of the things he was not informed of until the last 12 months"; and when he "is not informed of certain things; [*sic*] he does not realize he was not informed until someone tells him he should have been informed." He argued "[t]his matter involves basic due process," and "[w]hen [he] is not informed of constitutional and due process rights, he should not be penalized by a time limitation until he has knowledge of the violation of his constitutional and due process rights."

Shortly after filing his amended motion, Smith also filed an untimely notice of a direct appeal of his convictions and/or sentences. This notice does not appear in the record, and no written motion accompanied it.

At a hearing, Smith testified as to why he did not move to withdraw his pleas sooner. He said the delay was because he "finally came to know and understand all the consequences of the plea." He also said no one ever told him there was a time limit to withdraw his pleas. As to the notice of appeal, Smith claimed he was not fully informed of his appeal rights. In this regard, Smith testified that his counsel, Roger Falk, told him he could not appeal a plea and that Falk did not discuss with him the time limit to file an appeal or the right to appointed counsel. Finally, Smith testified as follows regarding whether he would have timely appealed:

> "Q. [Defense counsel]. Had you known at the time that you could of [*sic*] appealed would you have wanted to appeal?
>
> "A. [Smith]. Had I understood the plea at the time, yes.

4

"Q. Just to be clear, if you could of [*sic*]—if you understood what you were doing at the time you would of [*sic*] wanted to appeal? Is that correct?

"A. Yeah. Yes."

Falk also testified. As to his conversations about Smith's appeal rights, Falk recounted the advice he gives to every client who is about to enter a guilty plea. This includes that the client will have a limited right to appeal a sentence but cannot appeal a sentence within the applicable grid box. Falk said he told Smith he had 10 days to file an appeal and that Falk would file one if Smith wanted him to. He said Smith never told him to do so. Falk did not specifically recall talking to Smith about the right to counsel on appeal.

On cross-examination, Falk admitted this discussion would have occurred before the plea was entered but said he believed he discussed Smith's appeal rights with him after sentencing because it is his normal practice to meet after sentencing to explain a client's appellate rights and determine whether the client wants to file a notice of appeal. He could not say "with absolute certainty" that he did so. Falk also believed he advised Smith his appeal right was a "hollow" one because the district court had followed the plea agreement and imposed the only sentence permitted by law. Falk again admitted he did not recall telling Smith he had the right to appointed counsel, if indigent, to handle an appeal. He said he "had assumed [he] would continue on" if Smith wanted to appeal and "certainly would of [*sic*] filed a notice of appeal on [Smith's] behalf."

The district court rejected Smith's motion to withdraw his plea on the merits. It also ruled Smith failed to demonstrate the excusable neglect required to permit the untimely motion. In addition, it rejected Smith's bid to appeal out of time since it found that Falk had advised Smith of his right to appeal. The court ruled:

"Defendant's claim that he would have filed an appeal in 2006 if he had known that he could appeal is not credible. It is illogical to believe that a defendant who receives a bargained for sentence would immediately turn around and file an appeal to set aside the sentence. The defendant who receives a sentence more severe than the sentence he plea bargained for, does not sit back silently and accept the sentence without a single complaint to the court or his counsel.

"Regarding the defendant's notice of appeal filed in this matter, none of the [*State v.*] *Ortiz*[, 230 Kan. 733, 640 P.2d 1255 (1982),] exceptions apply. Defendant's claim that his appeal is timely under *State v. Ortiz* is not supported by the evidence. Defendant was advised of his right to appeal his sentence and that his appeal must be filed within 10 days.

. . . .

"Defendant's attorney testified that he advised the defendant that he had 10 days to file an appeal . . . .

"In addition, the defendant was not indigent. He gave up his court appointed attorney and retained his attorney, Mr. Falk. Mr. Falk testified that he would have filed an appeal if he had been asked.

"Therefore, the requirements set forth in *State v. Patton*[, 287 Kan. 200, 195 P.3d 753 (2008),] were met. The defendant has no right to file an appeal at this time. The defendant's notice of appeal is dismissed as filed out of time."

The district court also adopted the State's proposed written findings of fact and conclusions of law, in which the court concluded: "It is clear that Smith's allegation that he would have filed an appeal is based upon the false premise that he didn't understand his plea. . . . Because this underlying premise is faulty, Smith has failed to provide

6

credible evidence that he would have filed an appeal had he been advised of the right to do so."

Smith timely appeals the district court's denials of his motion and out-of-time appeal. Jurisdiction is proper. See K.S.A. 2014 Supp. 22-3601(b)(3), (4) (appeal directly to supreme court when maximum sentence of life imprisonment imposed or defendant convicted of certain off-grid crimes, including first-degree murder).

UNTIMELY NOTICE OF APPEAL

Smith asserts a right to file an untimely appeal under *State v. Ortiz*, 230 Kan. 733, 735-36, 640 P.2d 1255 (1982). Specifically, he argues his appeal should be allowed because he was not properly informed of his appeal rights. Although we agree Smith was not properly informed of his appeal rights, we reject his *Ortiz* claim because he fails to overcome the district court's finding that he would not have timely appealed even with that additional knowledge.

*Standard of Review*

A district court's ruling on whether an *Ortiz* exception applies is reviewed on appeal under a dual standard. The facts underlying the district court's ruling are reviewed for substantial competent evidence, while the legal conclusion as to whether the exception applies is reviewed de novo. *State v. Phinney*, 280 Kan. 394, 404, 122 P.3d 356 (2005).

7

*Discussion*

A timely notice of appeal is a prerequisite to appellate jurisdiction. *Ortiz*, 230 Kan. at 735. But there are exceptions to that in those cases in which a defendant was: (1) not informed of his or her rights to appeal; (2) not furnished an attorney to exercise those rights; or (3) furnished an attorney who failed to perfect and complete an appeal. 230 Kan. at 736. Smith asserts his claim under the first *Ortiz* exception.

A defendant may now qualify to take an untimely appeal when the defendant was not informed of his or her appeal rights if denied basic procedural due process. *State v. Patton*, 287 Kan. 200, 219, 195 P.3d 753 (2008). To provide due process in this context a court must inform a criminal defendant at sentencing, regardless of whether the defendant has entered a plea or gone to trial: (1) that a right to appeal the severity level of the sentence exists; (2) the time limit for taking an appeal; and (3) that, if the defendant is indigent, an attorney will be appointed for the purpose of taking any desired appeal. 287 Kan. at 220.

Claims arising under the first *Ortiz* exception are tried using a three-part burden-shifting framework. First, the defendant must demonstrate from the sentencing hearing transcript that the sentencing judge failed to communicate one or more of the three required pieces of information. If that is shown, the State bears the burden in the second part of proving the defendant nevertheless possessed actual knowledge of all the required information by some means other than the district judge's statements at sentencing. Finally, if the State cannot demonstrate this, the burden shifts back to the defendant to prove that had he or she been properly informed, a timely appeal would have been pursued. 287 Kan. at 221-22.

At the 2006 sentencing hearing following Smith's pleas, the trial court imposed sentences consistent with the plea agreement. But the trial court only told Smith, "In regard to the sentence that has been imposed and the proceedings herein, you may have a right to appeal. You should discuss that with your attorney." Plainly, Smith met his burden at the first step because the sentencing judge merely said that he "may" have a right to appeal and advised him to consult his attorney.

The State argues it met its burden in the second part because Falk had told Smith of the applicable time period in which to file his appeal and that Falk said he would file an appeal if Smith directed him to do so. This falls short of what is required, though, because the district court did not find that Falk actually advised Smith of his right to appointed appellate counsel, if indigent. And the State points to no evidence to support such a finding, nor is any apparent in our review of the record. Falk testified only that he assumed he would continue to act as Smith's attorney and said nothing about the appointment of counsel. Accordingly, we hold that the State presented insufficient evidence to carry its burden in the second step because *Patton* unambiguously requires that a defendant be apprised of the right to appointed appellate counsel. *Patton*, 287 Kan. at 220.

The final question is whether Smith carried his burden to establish he would have taken a timely appeal but for his ignorance of his right to appointed counsel. This is where his argument fails.

The district court ruled Smith would not have filed a timely appeal "if he had known that he could appeal." The court found Smith knew he could appeal, knew the time limit in which he could do so, had counsel, and was not indigent. Moreover, the court found the only justification Smith offered for failing to timely appeal was that he did not understand his plea—not a deficiency in his knowledge of his appellate rights.

9

The defendant's burden to prove he would have appealed if properly advised is an evidentiary one. *Patton*, 287 Kan. at 201; *State v. Gill*, 287 Kan. 289, 295, 196 P.3d 369 (2008). "The correct appellate standard of review when a party has failed to sustain its burden of proof is the one applied to a negative finding of fact." *In re Marriage of Kuzanek*, 279 Kan. 156, 159, 105 P.3d 1253 (2005). A "negative finding will not be rejected on appeal unless the party challenging the finding proves arbitrary disregard of undisputed evidence, or some extrinsic consideration such as bias, passion, or prejudice." 279 Kan. at 160; see also *State v. Murray*, 302 Kan. 478, 482, 353 P.3d 1158 (2015) (reviewing as a negative finding district court determination that State failed to meet its burden of proving compliance with statutory procedures for determining a criminal defendant's competency after a hearing on a motion to correct an illegal sentence).

Smith does not provide any argument to challenge the district court's determination that he failed to sustain his burden of proof. At oral argument, Smith gave no other reasons to bolster what amounts to a fatal omission on appeal. More specifically, Smith does not claim the court's determination was influenced by bias, passion, or prejudice. The only reference in his appellate brief to whether he would have taken a timely appeal is a single sentence, unaccompanied by argument or authority, which reads: "The Defendant stated if he had understood he would have appealed."

The State notes this and argues this sentence mischaracterizes Smith's actual testimony because the "understanding" to which he referred was his understanding of the terms of the plea, not his understanding of his appeal rights. We agree. The district court expressly found Smith asserted only that he would have appealed if he had understood his plea. This finding is supported by the only question-and-answer exchange on this topic in which Smith vaguely agreed he would have wanted to appeal "if [he] understood what [he was] doing at the time . . . ."

10

Moreover, even assuming Smith's testimony would have been sufficient to sustain a finding in Smith's favor, it cannot be said the district court arbitrarily disregarded it in making the opposite finding. The district court's determination that Smith knew of his right to appeal and the time limit to do so is supported by Falk's testimony. Smith did not produce any evidence tending to show he would have acted differently if he knew this right included the right to appointed counsel if he was indigent. Smith was represented by retained counsel during the time period in which he could have appealed. Smith did not produce any evidence that he was indigent, nor did he produce evidence that the potential cost of an appeal played any role in his decision not to appeal.

Finally, Smith suggests that, even if his case does not fit within an enumerated *Ortiz* exception, his untimely appeal should still be allowed because his attorney advised him his appeal right was "hollow." But Smith provides no authority for an exception to the time limits governing appellate jurisdiction other than those recognized in *Ortiz*.

The district court's judgment dismissing the appeal as untimely is affirmed because he fails to meet his evidentiary burden under the third step of the *Patton* framework.

UNTIMELY MOTION TO WITHDRAW PLEA

Under K.S.A. 2014 Supp. 22-3210(e)(1), a motion to withdraw plea must be brought within a year of: (a) the final order of the last appellate court in this state to exercise jurisdiction on a direct appeal or the termination of such appellate jurisdiction; or (b) the denial of a petition for a writ of certiorari to the United States Supreme Court or issuance of such court's final order following the grant of such petition. But this time limitation can be extended by a court upon an

affirmative showing of excusable neglect by the defendant under K.S.A. 2014 Supp. 22-3210(e)(2).

Smith argues next that the district court erred denying his motion to withdraw his pleas because he was not fully informed of the pleas' consequences. But Smith's motion was untimely, so he must demonstrate his failure to act within the limitation period was the product of excusable neglect. See K.S.A. 2014 Supp. 22-3210(e)(1) and (e)(2) (1-year time limit may be extended only upon an additional, affirmative showing of excusable neglect). The district court ruled Smith failed to make this required showing.

The 1-year time limit became effective on April 16, 2009. For claims like Smith's which preexisted that date, the time limit expired on April 16, 2010. *State v. Moses*, 296 Kan. 1126, 1128, 297 P.3d 1174 (2013). When a defendant who files a motion to withdraw outside the 1-year limitation period fails to make an affirmative showing of excusable neglect, the motion is untimely and procedurally barred. 296 Kan. at 1128. Smith does not present any argument in his appellate brief as to why his motion is not time-barred.

We hold Smith waived or abandoned any challenge to the district court's ruling that his motion was time-barred.

Affirmed.